**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

MARY KILBY,

                Petitioner,      :      Case No. 3:14-cv-317

    - vs -                                District Judge Walter Herbert Rice
                                          Magistrate Judge Michael R. Merz

MONTOMGERY COUNTY COURT OF
COMMON PLEAS, JUVENILE DIVISION,
                                                    :

                Respondent.

---

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

      This habeas corpus case, brought pursuant to 28 U.S.C. §2241, is before the Court on Petitioner's Objections (Doc. No. 16) to the Magistrate Judge's Report and Recommendations recommending denial of relief (the "Report," Doc. No. 14). Respondent has filed a response to the Objections (Doc. No. 18) and Judge Rice has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (Doc. No. 17).

      The relevant procedural history is set recited in the Report (Doc. No. 14, PageID 228-31). Petitioner acknowledges the recitation of the history is accurate (Objections, Doc. No. 16, PageID 245).

      This is a pre-trial habeas petition raising a Double Jeopardy claim. The Report concluded our standard of review is not deferential under 28 U.S.C. § 2254(d) as Respondent had argued (Report, Doc. No. 14, PageID 231-33, relying on *Phillips v. Ct. C.P. Hamilton County,* 668 F.3d 804 (6th Cir. 2012)). The Report also concluded, contrary to Respondent's arguments, that Petitioner had exhausted her available state court remedies and this was not an appropriate case

for abstention under *Younger v. Harris*, 401 U.S. 37 (1971). *Id.* at PageID 233-36. Neither party has objected to these conclusions.

Instead, Mrs. Kilby's objects that the Magistrate Judge did not actually conduct a *de novo* review, but deferred inappropriately to the Second District Court of Appeals' application of *State v. Johnson,* 128 Ohio St. 3d 153 (2010), to the facts of this case. Petitioner asserts "it is this initial factual conclusion that must be reviewed *de novo*, and . . . such conclusion cannot withstand such scrutiny." (Objections, Doc. No. 16, PageID 247.)

The deferential review rejected in the Report is that which would be required by 28 U.S.C. § 2254(d)(1). That statute applies only to post-judgment habeas corpus cases attacking a judgment upheld by the state courts in the face of a federal constitutional claim. As the Report concluded § 2254(d)(1) is not applicable here because this is a pre-judgment habeas case. (Doc. No. 14, PageID 239-40, citing *Phillips, supra*)).[1]

Just because AEDPA deference is not applicable does not mean that no deference is required. The balance of this Supplemental Report will provide alternative analyses. The first portion will discuss the possibility of non-AEDPA deference to the Second District on its factual conclusions and decisions of state law. The second portion will assume no deference at all is due and provide a completely *de novo* determination on the Double Jeopardy question.

---

[1] When it is applicable, § 2254(d)(1) a state court decides on the merits a federal constitutional claim later presented to a federal habeas court after judgment, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). Because it was adopted as part of the Antiterrorism and effective Death Penalty Act of 1996, § 2254(d)(1) deference is often referred to as "AEDPA deference."

2

**Deference Apart from the AEDPA**

Factual findings made by state courts were already entitled to a high measure of deference from federal courts under pre-AEDPA law. *Rushen v. Spain*, 464 U.S. 114, 120 (1983); *Marshall v. Lonberger*, 459 U.S. 422 (1983); *Sumner v. Mata,* 455 U.S. 591 (1982). That is, they are to be reviewed under the clearly erroneous standard, *Weston v. Kernan*, 50 F.3d 633 (9th Cir. 1993). Such findings include the contents of the state court record, explicit factual findings of the state court, and inferences fairly deducible from these facts; they are not to be set aside unless they lack even "fair support" in the record. *Marshall, supra.* This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir. 2007); *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), *citing Sumner v. Mata*, 449 U.S. 539, 546-47 (1981). Thus to the extent Petitioner complains of factual findings made by the Second District, she must demonstrate they are erroneous by clear and convincing evidence.

Petitioner argues that the Second District's "ultimate legal conclusion – that the two offenses at issue herein are not allied offenses of similar import – was, of necessity, dependent upon its <u>factual</u> conclusion that the two prosecutions were not based upon the same conduct." (Objections, Doc. No. 16, PageID 247, emphasis sic.) To the extent that the Second District reached that factual conclusion, Mrs. Kilby has not overcome it with clear and convincing evidence. The Second District held:

> **[\*P32]** Most importantly, we cannot conclude that the felony offense of which Kilby was convicted and the misdemeanor charge, pursuant to R.C. 2151.421,[2] correspond to such a degree

---

[2] Ohio Revised Code § 2151.421, which Mrs. Kilby is charged with violating in the pending case, provides "No

> that Kilby's conduct in failing to personally minister care to Makayla by, for example, treating the obvious unbandaged wounds all over the child's body, constitutes a failure to make a statutorily mandated report, by telephone or in person, to a peace officer or children services, for purposes of initiating an investigation to determine the cause of and responsibility for Makayla's evident neglect. In other words, the offenses are not of similar import but rather were committed by distinct instances of failing to act, namely as Makayla's case manager of her personal caretakers, and separately as a statutorily mandated reporter. This conclusion is buttressed by the fact that R.C. 2903.16[3] did not require Kilby to make a report regarding Makayla's abuse or neglect, while R.C. 2151.421 mandated that she make such a report. One is an omission in rendering medical assistance, the other a crime of omission in not contacting the appropriate authorities.

*State v. Kilby,* 2013 Ohio App. LEXIS 5559 (2nd Dist. 2013). It is in no way illogical to conclude, as the Second District did, that Mrs. Kilby engaged in two separate failures to act, i.e., by failing to provide care and by failing to report abuse by others. A parallel example might be a person who fails to maintain his vehicle in marked lanes by driving left of center who then strikes another car and fails to stop to identify himself. Both are failures to act in a situation where there is a legal duty to do so. Both occur in a continuous course of conduct. But they are separate duties, separate offenses of dissimilar import. More generally, at any given time any person may be under simultaneous legal duties to act; simultaneous failures to act would not make the offenses in question "of similar import."

Entirely apart from AEDPA deference under § 2254(d)(1) or deference to state court fact

---

person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child under eighteen years of age or a mentally retarded, developmentally disabled, or physically impaired child under twenty-one years of age has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge or reasonable cause to suspect to the entity or persons specified in this division."

[3] Ohio Revised Code § 2903.16, the felony offense to which Mrs. Kilby pled, provides "(A) No caretaker shall knowingly fail to provide a functionally impaired person under the caretaker's care with any treatment, care, goods, or service that is necessary to maintain the health or safety of the functionally impaired person when this failure results in physical harm or serious physical harm to the functionally impaired person."

finding, federal courts must also defer to state court decisions on questions of state law.  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

In its opinion in this case, the Second District was determining the meaning of Ohio Revised Code § 2941.25 which provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The Second District's opinion decided that Mrs. Kilby's failure to act in this case constituted two or more offenses of dissimilar import.  To the extent that is a state law question – what does Ohio Revised Code § 2941.25 mean – this Court is bound to defer.  From a slightly different perspective, it is also a state law question how the Ohio Supreme Court's decision in *Johnson, supra*, applies to this case and that is also a question on which the Second District's decision is binding on us.

**Decision Without Deference**

> In *Phillips, supra*, the Sixth Circuit held:
>
>> We agree with our sister circuits and hold that habeas petitions governed by § 2241 are not subject to the heightened standards contained in § 2254(d).[Footnote omitted] Accordingly, we must conduct a de novo review of the state court proceedings in addressing Phillips's petition. *See Martinez*, 644 F.3d at 242; *Walck*, 472 F.3d at 1235.

668 F.3d at 810. The analysis in the first part of this Report assumed *arguendo* that in rejecting AEDPA deference the Sixth Circuit was not precluding the factual and state law question deference given to state court decisions in non-AEDPA contexts, e.g., with pre-trial petitions. In this portion of the Supplemental Report, the Magistrate Judge makes the alternative assumption, to wit, that *de novo* review means this Court must decide the Double Jeopardy question without reference to the Second District's decision.

One aspect of the Double Jeopardy Clause is that it protects against multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); *Garrett v. United States*, 471 U.S. 773, 779 (1985); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its

intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.")  The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself.  *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), *citing Albernaz*.[4]

The two statutes under which Mrs. Kilby is charged on their face satisfy *Blockburger*.  That is, failure to report abuse by another is different from failure to provide care directly.  But the protection afforded a criminal defendant under Ohio Revised Code § 2941.25 is broader than that provided by the *Blockburger* test.  That is, if certain conduct can be construed as violating two statutes which have different elements (thus meeting the *Blockburger* test) but are allied offenses of similar import under Ohio Revised Code § 2941.25, they constitute the same "offense" under Ohio law and it is the intent of the Ohio General Assembly, enacted in Ohio Revised Code § 2941.25, that they not be separately punished.  The Magistrate Judge takes this to be what the Ohio courts mean when they say Ohio Revised Code § 2941.25 "codifies" Double Jeopardy protections.  As the Second District recently explained shortly after *Johnson* was decided:

> R.C. 2941.25 codifies the double jeopardy protections in the federal and Ohio Constitutions, which prohibit courts from imposing cumulative or multiple punishments for the same criminal conduct unless the legislature has expressed an intent to impose them. R.C. 2941.25 expresses the legislature's intent to prohibit multiple convictions for offenses which are allied offenses of similar import per paragraph (A) of that section, unless the conditions of paragraph (B) are also satisfied." *State v. Barker*, 183 Ohio App.3d 414, 2009-Ohio-3511, ¶ 22, 917 N.E.2d 324, citing *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, overruled on other grounds by *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.

*State v. Bridgeman*, 2011-Ohio-2680, ¶ 50, 2011 Ohio App. LEXIS 2291 (2nd Dist. Jun. 3, 2011).

---

[4] *Volpe* also holds that "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes."  *Volpe, citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).  This holding contravenes the assumption underlying this portion of the Supplemental Report.

To decide the Double Jeopardy question *de novo*, then, this Court must apply *Johnson, supra,* to the facts of this case without regard to the application of *Johnson* by the Second District. In *Johnson*, the Ohio Supreme Court decided:

> *D. Prospective analysis of allied offenses under R.C. 2941.25*
>
> [**P46**] In determining whether two offenses should be merged, the intent of the General Assembly is controlling. We determine the General Assembly's intent by applying R.C. 2941.25, which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct. We have long held that the statute's purpose is to prevent shotgun convictions, as explained in the statute's Legislative Service Commission comments. *Geiger,* 45 Ohio St.2d at 242, 74 O.O.2d 380, 344 N.E.2d 133. With these considerations in mind, we adopt the following approach to determination of allied offenses.
>
> [**P47**] Under R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct. Thus, the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.
>
> [**P48**] In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. *Blankenship,* 38 Ohio St.3d at 119, 526 N.E.2d 816 (Whiteside, J., concurring) ("It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses can be committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses." [Emphasis sic]). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.
>
> [**P49**] If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." *Brown,* 119 Ohio St.3d 447, 2008 Ohio 4569, 895 N.E.2d 149, at P 50 (Lanzinger, J., dissenting).

> [**P50]  If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.
>
> [**P51]  Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

Applying *Johnson* directly to the facts of this case, the Magistrate Judge concludes that the commission of one of the charged offenses will never result in the commission of the other, i.e., failure to provide care when required to do so is not ever a failure to report abuse by another. To return to the prior example, driving left of center will never result in leaving the scene of an accident. They might happen in a continuous course of conduct, but they can be separately punished because they are not a single offense.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge again respectfully recommends that the Petition be denied. Having reconsidered the matter on recommittal, the Magistrate Judge is now persuaded, however, that reasonable jurists could disagree and recommends a certificate of appealability issue if the Court denied the Petition.

March 5, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

9

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).