IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARY KILBY,

      Petitioner,

    v.

COURT OF COMMON PLEAS OF
MONTGOMERY COUNTY, OHIO,
JUVENILE DIVISION,

      Respondent.

:

:

:

:

Case No. 3:14-cv-317

DISTRICT JUDGE WALTER H. RICE

MAGISTRATE JUDGE MICHAEL R. MERZ

---

DECISION AND ENTRY ADOPTING THE REPORT AND
RECOMMENDATIONS (DOC. #14) AND ADOPTING IN PART AND
REJECTING IN PART THE SUPPLEMENTAL REPORT AND
RECOMMENDATIONS (DOC. #20) OF THE UNITED STATES
MAGISTRATE JUDGE; PLAINTIFF'S OBJECTIONS TO SAID JUDICIAL
FILINGS (DOC. #16 AND DOC. #22) OVERRULED; THE PETITION
FOR A WRIT OF HABEAS CORPUS (DOC. #1) IS DISMISSED WITH
PREJUDICE; PETITIONER IS DENIED A CERTIFICATE OF
APPEALABILITY AND AN ANTICIPATED REQUEST TO APPEAL IN
FORMA PAUPERIS; JUDGMENT TO ENTER IN FAVOR OF
RESPONDENT AND AGAINST PETITIONER HEREIN; TERMINATION
ENTRY

---

Pending before the Court is the Petition for Writ of Habeas Corpus (Doc. #1)

filed by Mary Kirby ("Petitioner"), who faces a first degree misdemeanor charge of

failing to report child abuse or neglect, in violation of Ohio Revised Code

§§ 2151.421(A)(1)(a) and 215199(C)(2), in the Juvenile Division of the Court of

Common Pleas, Montgomery County, Ohio ("Respondent"). Petitioner claims that

prosecuting her for this offense will amount to Double Jeopardy, in violation of the

1

Fifth Amendment of the United States Constitution, because her previous

conviction under Ohio Revised Code § 2903.16(A), for knowingly failing to provide

a functionally impaired person with treatment or care that results in serious

physical harm, was based in part on her conduct of failing to report the abuse and

neglect that resulted in the death of Makayla Norman.  Doc. #1.

Petitioner had successfully argued her Double Jeopardy claim in a Motion to

Dismiss that Respondent sustained, but that decision was reversed by Ohio's

Second District Court of Appeals.  *State v. Kilby*, 2013-Ohio-5340 (Ohio Ct. App.

2013).  The court analyzed Petitioner's argument under Ohio Revised Code

§ 2941.25.  *Id.* ¶¶ 20-34.  That statute "protects a criminal defendant's rights

under the Double Jeopardy Clauses of the United States and Ohio Constitutions"

by setting forth a test for determining whether the Ohio legislature intended "two

or more allied offenses" to be "of similar import."  *State v. Johnson*, 2010-Ohio-

6314, 942 N.E.2d 1061, 1069 (Ohio 2010).  Under the statute, a defendant may

be charged, but not convicted, of two or more "allied offenses of similar import."

Ohio Rev. Code § 2941.25.[1]  When rejecting Petitioner's argument, the Second

District Court of Appeals stated the following:

_____

[1] Ohio Rev. Code § 2941.25 is often referred to as the "merger" statute, because
allied offenses of similar import must be "merged" for purposes of conviction when
they are the subject of a single prosecution.  Here, where there are two separate
proceedings, there is no technical "merger" of offenses, but the statute would still
operate to preclude the second prosecution to realize the "multiple prosecutions"
protection of the Double Jeopardy clause.  The distinction is only the result of the
number of prosecutions brought against the defendant that contain the challenged
offenses, and is of no analytical significance.  *See United States v. Dixon*, 509

2

Most importantly, we cannot conclude that the felony offense of which Kilby was convicted and the misdemeanor charge, pursuant to R.C. 2151.421, correspond to such a degree that Kilby's conduct in failing to personally minister care to Makayla by, for example, treating the obvious unbandaged wounds all over the child's body, constitutes a failure to make a statutorily mandated report, by telephone or in person, to a peace officer or children services, for purposes of initiating an investigation to determine the cause of and responsibility for Makayla's evident neglect.  In other words, the offenses are not of similar import but rather were committed by distinct instances of failing to act, namely as Makayla's case manager of her personal caretakers, and separately as a statutorily mandated reporter.  This conclusion is buttressed by the fact that R.C. 2903.16 did not require Kilby to make a report regarding Makayla's abuse or neglect, while R.C. 2151.421 mandated that she make such a report.  One is an omission in rendering medical assistance, the other a crime of omission in not contacting the appropriate authorities.

. . .

Having determined that Kilby's offenses were committed separately, such that her subsequent prosecution for failing to report child abuse or neglect is not barred by double jeopardy protections and not subject to merger, we hereby sustain the State's sole assignment of error.  The judgment of the trial court is reversed and vacated, and the matter is remanded for proceedings consistent with this opinion.

*Kilby*, 2013-Ohio-5340, ¶¶ 32-34.

The initial Report and Recommendations of the United States Magistrate

Judge recommended denying the Petition with prejudice and denying Petitioner a

certificate of appealability.  Doc. #14 at 15.  The Magistrate Judge reasoned that:

whether the two crimes charged here are allied offenses of similar import under Ohio Revised Code § 2941.25 is a question of Ohio law on which the Ohio courts are entitled to the final word.  Because the Second District has

---

U.S. 688, 704 (1993) (stating that there is "no authority" supporting the proposition that there is "a 'successive prosecution' strand of the Double Jeopardy Clause that has a different meaning from its supposed 'successive punishment' strand" except *Grady v. Corbin*, 495 U.S. 508 (1990), and overruling *Grady*).

> determined that they are not allied offenses of similar import in this case,
> trying Ms. Kilby on the failure to report charge cannot violate the Double
> Jeopardy Clause.
>
> This is not a matter of deference to the state courts under 28 U.S.C.
> § 2254(d)(1) because in fact the Second District did not apply, reasonably or
> unreasonably, any clearly established Supreme Court precedent interpreting
> the Double Jeopardy Clause.  Rather, it determined that the Ohio General
> Assembly intended to permit punishment for both offenses in the factual
> context of this case and that determination is both binding on this Court and
> dispositive of Ms. Kilby's habeas corpus claim.

*Id.* at 14-15.

Petitioner filed Objections to the Report and Recommendations on February

13, 2015.  Doc. #16.  Therein, she argued that in spite of the Magistrate Judge's

conclusion that a deferential standard of review did not apply, he "did not conduct

a complete and thorough *de novo* review" of the Ohio Court of Appeal's decision.

*Id.* at 2.  According to Petitioner:

> it is plain that the state court's ultimate legal conclusion – that the
> two offenses at issue herein are not allied offenses of similar import –
> was, of necessity, dependent upon its <u>factual</u> conclusion that the two
> prosecutions were not based upon the same conduct.  Petitioner
> submits that it is this initial factual conclusion that must be reviewed
> *de novo*, and that such conclusion cannot withstand such scrutiny.

*Id.* at 4.

On February 17, 2015, after preliminary consideration of Petitioner's

Objections, the Court recommitted the matter to the Magistrate Judge for further

review and analysis.  Doc. #17.

The Magistrate Judge issued a Supplemental Report and Recommendations

on March 6, 2015.  Doc. #20.  After considering Petitioner's argument that a less

4

deferential standard applied, the Magistrate Judge analyzed the state court decision under two different standards of review. Under the first, a "clearly erroneous" standard applied to the factual findings of the state court, and a deferential standard applied to the state court's conclusions on questions of state law. *Id.* at 3. Applying this standard, Petitioner had not overcome the "factual conclusion that the two prosecutions were not based upon the same conduct" by clear and convincing evidence because it was not "illogical to conclude, as the Second District did, that Mrs. Kilby engaged in two separate failures to act, i.e., by failing to provide care and by failing to report abuse to others." *Id.* at 3-4. This standard also required deference to the state court's construction of Ohio Revised Code § 2945.25, concluding that the two offenses in question were not "allied offenses of similar import," and its application of *State v. Johnson*, 2010-Ohio-6314, 942 N.E.2d 1061, 1069 (Ohio 2010), the Ohio Supreme Court's opinion construing the statute.

Under the second standard in the Supplemental Report and Recommendations, the Magistrate Judge applied a *de novo* standard "without reference" to the state court's decision. *Id.* at 7. This first involved reading the Ohio criminal statutes under the test in *Blockburger v. United* States, 284 U.S. 299, 304 (1932), which states that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." The two Ohio statutes satisfied

5

*Blockburger* because "failure to report abuse by another is different from failure to provide care directly." Doc. #20 at 7.

After the *Blockburger* analysis, the Magistrate Judge applied Ohio's statute requiring merger of "allied offenses of similar import" committed by "the same conduct," Ohio Revised Code § 2941.25, and the Ohio Supreme Court's *Johnson* opinion to Petitioner's case. The Magistrate Judge noted that the Ohio statute provides more protection than *Blockburger* because it may require the merger of offenses committed by the "same conduct" that *Blockburger* would allow to be separately punished. *Id. Johnson* sets forth the following test for applying the statute:

> Under R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct. Thus, the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.
>
> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.
>
> If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind."
>
> If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.
>
> Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the

offenses are committed separately, or if the defendant has separate
animus for each offense, then, according to R.C. 2941.25(B), the
offenses will not merge.

*Johnson*, 948 N.E.2d at 1070, 2010-Ohio-6314 at ¶¶ 47-51 (citations omitted).

Applying *Johnson*, the Magistrate Judge determined that the offenses in
question did not require merger under the statute because "the commission of one
of the charged offenses will never result in the commission of the other, i.e.,
failure to provide care when required to do so is not ever a failure to report abuse
by another." Doc. #20 at 9. Thus, the Magistrate Judge again recommended
denying Petitioner's claim. However, in contrast to the initial Report, he opined
that reasonable jurists might reach a different conclusion, and therefore
recommended granting Petitioner a certificate of appealability on her Double
Jeopardy claim. *Id.*

Petitioner filed an Objection to the Supplemental Report and
Recommendations on April 6, 2014. Doc. #22. Therein, Petitioner restated her
position that a *de novo* standard applies, and objected to any deference in the
Court's review of the decision of the Ohio Court of Appeals. *Id.* at 6. However,
she objected that the Supplemental Report and Recommendations' purported *de
novo* review "gave no detailed analysis of the facts" of her case:

> Petitioner submits that the foregoing conclusion is untenable, given
> the facts in the record that demonstrate the State's theory of the
> prosecution of the felony "failure to care" offenses. In the State
> appellate court, as it does here, Respondent argued that the first
> prosecution on the charges of failure to provide care for Makayla
> Norman was based solely on the failure to provide direct hands-on
> nursing care for the wounds and other physical abnormalities that

7

were present at or shortly before her death.  This is the view that the
state Court of Appeals accepted.  See *State v. Kilby*, 2013-Ohio-
5340, ¶¶ 30-32.  Petitioner, on the other hand, argued that when all
of the facts, allegations, and arguments put forth by the State in its
own filings [are] considered, the only logical conclusion is that the
first prosecution was based upon both a failure to provide direct
medical treatment and a failure to report apparent neglect.  In other
words, one omission of duty that occurred in the year long course of
conduct constituting the failure to provide "care" or "services" was
the failure to report conditions to the proper authorities.

*Id*.

After quoting several references to the "failure to report" set forth in the Bill

of Particulars on which the State based her "failure to care" charge, Petitioner

reasoned that:

the foregoing amply demonstrates that the first prosecution was not
premised solely on a failure to provide direct medical care and
treatment.  Such conclusion disregards too many instances of
Respondent's explicit reference[s] to reporting, as well as the overall
theme of referencing the conditions of the home.  Acceptance of the
argument that the first prosecution was based solely on a failure to
provide direct medical care can only result in the untenable conclusion
that such references were meaningless in the context of the
prosecution for the failure to provide care or services, or that Mrs.
Kilby was somehow obligated to directly, physically clean up the
mess, restore the water service, do the laundry, etc.  Neither
conclusion makes logical sense.  Instead, such references can only
mean that in connection with the felony prosecution for failure to
provide care or services, the State's theory was that there was a
continuing course of conduct (or inaction) that included both the
failure to provide direct physical care for Makayla and the failure to
report the living conditions and other signs of neglect to the proper
authorities.  Thus, for purposes of allied offense/Double Jeopardy
analysis under *Johnson, supra*, both offenses not only can be
committed with the same conduct but also were committed with the
same conduct.

*Id.* at 9-10.

8

As an initial matter, it must be noted that this is not a case in which the highly deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. The AEDPA standard applies to "[a]n application for a writ of habeas corpus on behalf of a person in custody *pursuant to the judgment* of a State court," but the "custody" that prompts Petitioner's claim is not pursuant to any judgment of an Ohio court. 28 U.S.C. § 2254(b)(1) (emphasis added). Rather, she is on a recognizance bond pursuant to an indictment, in anticipation of a future trial in state court. This satisfies the "custody" requirement for bringing a habeas petition under 28 U.S.C. § 2241(c)(3), which allows for a writ of habeas corpus to be granted to one who "is in custody in violation of the Constitution or laws or treaties of the United States," without triggering AEDPA's heightened standard of review. *Phillips v. Court of Common Pleas, Hamilton Cnty., Ohio*, 668 F.3d 804, 809 (6th Cir. 2012) (holding that AEDPA, "by its own terms," does not apply to an indicted pretrial detainee who pursues habeas relief under 28 U.S.C. § 2241). Accordingly, Petitioner's claim must be addressed by conducting a *de novo* review of the state court proceedings on which it is based. *Id.* at 810. As discussed below, however, the particular law applicable to Petitioner's Double Jeopardy claim requires deference to the state court's interpretation of its own legislature's intent that effectively overrides the *de novo* standard.

9

The Double Jeopardy Clause of the Fifth Amendment forbids any person "to be twice put in jeopardy of life or limb" for the same offense.[2]  U.S. Const. amend. V.  The Double Jeopardy Clause "guarantees that the State shall not be permitted to make repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."  *Blueford v. Arkansas*, 132 S. Ct. 2044, 2050 (2012) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977)).  The Supreme Court recognizes "three basic protections" guaranteed by the Double Jeopardy Clause: protection "against a second prosecution for the same offense after acquittal," protection "against a second prosecution for the same offense after conviction," and protection "against multiple punishments for the same offense."  *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (quoting *Brown v. Ohio*, 423 U.S. 161, 165 (1977)).

The Double Jeopardy Clause protects a defendant "from being punished more than once for a single act when the legislature does not intend for the punishments to be cumulative."  *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (citing *Albernaz v. United States*, 450 U.S. 333, 344 (1981)).  When the Double Jeopardy claim involves federal offenses, a court applies the *Blockburger* test (quoted previously) to determine Congressional intent regarding cumulative

---

[2] The Fifth Amendment's Double Jeopardy Clause applies to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

10

punishment. *See Blockburger v. United* States, 284 U.S. 299, 304 (1932);

*Albernaz*, 450 U.S. at 337. However, the Supreme Court has stated that "the

*Blockburger* test does not necessarily control the inquiry into the intent of a state

legislature. Even if the crimes are the same under *Blockburger*, if it is evident that

a state legislature intended to authorize cumulative punishments, a court's inquiry

is at an end." *Ohio v. Johnson*, 467 U.S. 493, 499 n.8 (1984). When a

defendant asserts that he will suffer multiple punishment for two state offenses,

"[l]egislative intent is the touchstone; it, and not the *Blockburger* test, determines

whether two offenses are the same and, if so, whether multiple punishments are

nevertheless intended." *Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir.) (2014)

(citing *Albernaz*, 450 U.S. at 344)). Furthermore, when considering a Double

Jeopardy claim that requires "assessing the intent of a state legislature, a federal

court is bound by a state court's construction of that state's own statutes."

*Volpe*, 708 F.3d at 697 (quoting *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir.

1989)). "Thus, for purposes of double jeopardy analysis, once a state court has

determined that the state legislature intended cumulative punishments, a federal

habeas court must defer to that determination." *Banner*, 886 F.2d at 780. A

federal court may only independently interpret the state statutes in the "narrow

situation in which the state courts below ha[ve] failed to give a clear expression on

the issue of cumulative punishment." *Id.* at 782 (limiting *Pryor v. Rose*, 724 F.2d

525 (6th Cir. 1984)).

11

The Court notes that this deference to a state court's interpretation of legislative intent formed part of Double Jeopardy law long before the 1996 passage of AEDPA. *E.g.*, *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983). Thus, as the Magistrate Judge noted, such deference is not a question of inappropriately applying the strict AEDPA standard to a habeas petition brought under 28 U.S.C. § 2241. Rather, it is a requirement of Double Jeopardy jurisprudence. Furthermore, Ohio's Second District Court of Appeals thoroughly considered the state's "allied offenses" statute, as well as the test for its application as set forth in the Ohio Supreme Court's *Johnson* opinion. Thus, *Pryor*'s "narrow exception" that allows a federal court to analyze legislative intent regarding two state offenses with no deference to the state court's interpretation does not apply.[3] *Volpe*, 708 F.3d at 688 n.1. For these reasons, the Court specifically adopts the reasoning of the Magistrate Judge in the initial Report and Recommendations (Doc. #14) that defers to the interpretation of Ohio's "allied offenses" statute, Ohio Rev. Code § 2941.25, and the application of *Johnson* by Second District Court of Appeals.

A further observation is in order, however. The Ohio Supreme Court recently elaborated on the *Johnson* test for interpreting the statute in *State v. Ruff*, --- N.E.3d ---, 2015-Ohio-995 (Ohio 2015). In *Ruff*, the Ohio Supreme Court

---

[3] As *Volpe* noted, this "narrow exception" appears to apply when there is simply no analysis of legislative intent to which to defer. *Volpe*, 708 F.3d at 688 n.1; *See Pryor*, 724 F.2d at 528 (quoting a state court opinion holding that two Tennessee offenses were "separate and distinct" with no mention of legislative intent).

12

retreated from its emphasis in *Johnson* on the primacy of a defendant's conduct in the analysis:

> In *Johnson,* we emphasized that abstract analysis of elements of a crime was insufficient and that the defendant's conduct must be considered when evaluating whether offenses are allied. While it is true that the syllabus in *Johnson* says that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered," this language does not offer the complete analysis necessary to determine whether offenses are subject to merger rather than multiple convictions and cumulative punishment. We agree with the state that our decision in *Johnson* was incomplete because R.C. 2941.25(B) provides that when a defendant's conduct constitutes two or more offenses of *dissimilar* import, the defendant may be convicted of all of the offenses.

*Id.* ¶ 16.

> Thus, the court provided the following elaboration on the *Johnson* test:

> Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id.* ¶¶ 30-31.

If the Court had faced a state court record that failed to address the question of whether the Ohio legislature intended to allow successive convictions

or multiple punishment for failure to report child abuse or neglect under Ohio
Revised Code §§ 2151.421(A)(1)(a) and failure provide a functionally impaired
person with treatment or care that results in serious physical harm under
§ 2903.16(A), *Pryor* would allow a *de novo* application of Ohio's merger statute.
This would require the Court to apply the Ohio Supreme Court's *Johnson* decision
and, of, course, its elaboration in *Ruff.*  Under this standard, Petitioner's Double
Jeopardy claim would still fail because, under *Ruff*, the offenses in question are
not "allied offenses of similar import" within the meaning of the statute.  Even if,
for the sake of argument, Petitioner's argument that the Bill of Particulars'
references to her failure to report abuse demonstrate that the State relied on those
acts to convict her for failure to provide care or treatment (a position that the
Second District Court of Appeals rejected), under *Ruff*, the inquiry does not end.
Merger would require answering all three of the *Ruff* questions in the negative, but
the Court would answer the first two in the affirmative.

First, the offenses in question are "dissimilar in import or significance—in
other words, each offense caused separate, identifiable harm."  *Ruff*, 2015-Ohio-
995 ¶ 31.  Although both offenses contributed to the ultimate harm of Makayla's
tragic death, their commission resulted in separate, identifiable harms.  If Petitioner
failed to report the abuse and neglect of Makayla "to the public children services
agency or a municipal or county peace officer in the county," as the reporting
statute requires, she not only harmed Makayla, she harmed the State's ability to
prevent further abuse and neglect of person so helpless that the adjective

14

"vulnerable" seems inadequate as a descriptor. Ohio Rev. Code § 2151.421(A)(1)(a). In other words, thwarting the State's ability to protect Makayla is a separate harm from her death, the ultimate result of the offenses.

Second, the acts were committed separately. Petitioner appears to argue that by doing nothing over the course of a year while the neglect of Makayla escalated and her health deteriorated, her conduct amounted to only one "failure to act," and can only be punished as such. This Court categorically rejects that position, and agrees with the Second District Court of Appeals and the Magistrate Judge that Petitioner's conduct involved two separate failures to act: a failure to provide care or treatment and a failure to report abuse or neglect. "One is an omission in rendering medical assistance, the other a crime of omission in not contacting the appropriate authorities." *State v. Kilby*, 2013-Ohio-340 ¶ 32. At any time, Petitioner could have either provided treatment or reported the neglect. She did neither.

Answering either of the first two questions in the affirmative would not require the Court to reach *Ruff*'s third question, which asks if the offenses were "committed with separate animus or motivation?" *Ruff*, 2015-Ohio-995 ¶ 31. The Court would only note that Petitioner's felony conviction under Ohio Revised Code § 2903.16(A) was for "knowingly failing to provide a functionally impaired person with treatment or care that result[ed] in serious physical harm," while the misdemeanor indictment she faces under Ohio Revised Code §§ 2151.421(A)(1)(a) for "fail[ing] to immediately report" suspicion of abuse or neglect contains no

15

element of intent. Thus, the State is not required to demonstrate any "animus" or "motivation" underlying a defendant's failure to report abuse. The Court, therefore, will not speculate on Petitioner's motives by addressing the third *Ruff* inquiry, as the first two demonstrate that, even without deference to the prior interpretations of the Ohio courts, her Double Jeopardy claim would have no merit.

Finally, based on the Ohio Supreme Court's recent *Ruff* opinion, the Court concludes that no reasonable jurist would disagree that Petitioner's Double Jeopardy claim has no merit. Accordingly, the Court rejects the suggestion of the Magistrate Judge to grant a certificate of appealability on this issue.

Based upon the foregoing, as well as upon a thorough *de novo* review of this Court's file and the applicable law, the Court adopts the conclusion of the United States Magistrate Judge in the initial Report and Recommendations (Doc. #14) and the Supplemental Report and Recommendations (Doc. #20) to dismiss the Petitioner's claim, but the Court rejects the recommendation to grant Petitioner a certificate of appealability. The Court OVERRULES Plaintiff's Objections (Doc. #16 and Doc. #22) to said judicial filings an d DISMISSES Petitioner's Petition for Writ of Habeas Corpus (Doc. #1) with prejudice. Given that Petitioner has not made a substantial showing of the denial of a constitutional right and, further, that the Court's decision herein would not be debatable among reasonable jurists, and because any appeal from this Court's decision would be <u>objectively</u> frivolous, Petitioner is DENIED a certificate of appealability, as well as an anticipated request

for leave to appeal *in forma pauperis*. Judgment will be entered in favor of Respondent and against Petitioner.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date:  April 13, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE